UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PINNACLE PERFORMANCE INC., | ) | |
| an Illinois Corporation | ) | No. 12 C 1136 |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| KERRI GARBIS, ERIC BERGERON, | ) | |
| PINNACLE NORTHEAST, INC., a | ) | |
| New York Corporation, OVATION | ) | |
| COMMUNICATIONS, LLC., a | ) | |
| Massachusetts Limited Liability | ) | |
| Company, | ) | |
|     Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Defendants' Motion For Enforcement of Settlement Agreement Dated September 6, 2012 (Defs.' Mot.) [dkt 78] is granted.

### Background

The lawsuit.

Plaintiff Pinnacle Performance, Inc. ("PPI") provides presentation and communication skills training for business professionals. (Am. Not. Rem., Grp. Ex. A, Compl. ¶ 14.) [Dkt 34.][1]

---

[1] Federal court jurisdiction is proper under 28 U.S.C. § 1332. PPI originally filed this action in the Circuit Court of Cook County to which defendants responded by filing a notice of removal to federal court based on diversity jurisdiction under 28 U.S.C. § 1332. (Order, Apr. 20, 2012, at 1.) [Dkt 32.] The notice of removal, however, failed to allege the citizenship of Ovation. (*Id.*) PPI moved to remand based on the defect in the notice of removal and also claimed that the amount in controversy did not exceed $75,000. (*Id.*) District Judge found that

Defendants Kerri Garbis and Eric Bergeron owned and operated a PPI franchise called Pinnacle Northeast, Inc. ("PNE"). (*Id.* ¶ 2.) According to PPI, in 2011, Garbis induced PPI to forgive a $50,000 debt and enter a franchise separation agreement with the understanding that Garbis would exit the presentation and communication skills training business and would transition PNE's clients, in particular General Electric, to PPI. (*Id.* ¶ 3.) PPI contends that Garbis has opened up a new skills training business, Ovation Communications, LLC ("Ovation"), which is providing training services to General Electric. (*Id.*)

David Marcotte is currently not a party to this lawsuit although PPI has moved to amend its complaint to join him as a defendant. [Dkt 35, 36.] According to PPI, Mr. Marcotte has breached his covenant not to compete with PPI by working for the defendants. (Decl. of David Lewis Supp. Mot. Am. Compl. ¶¶ 16-23.) [Dkt 55.]

The settlement conference.

This court conducted a settlement conference with the parties and their attorneys over the course of two days, September 5 and 6, 2012. [Dkt 64, 67.] The conference was attended by David Lewis (CEO and co-founder of PPI) and Gary Mills (co-founder of PPI) as well as PPI's attorney Mitchell Chaban, and by defendants Kerri Garbis and Eric Bergeron (the managers of Ovation) and the defendants' attorney Michael Stiegel. The conference began at 10:30 a.m. on September 5, went until approximately 5 p.m. that day, and continued the next morning. At the conclusion of the conference on September 6, the parties signed a document entitled "Pinnacle Performance, Inc. v.

---

the amount in controversy exceeded $75,000, and allowed defendants to file an amended notice of removal, which they did [dkt 34]. (*See* Order, Apr. 20, 2012, at 2-3.)

Garbis, et al. Sept 6, 2012  Settlement terms."   That document states:

1.  Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

A.  They will never use the Ovation/ GE presentation materials and materials that Pinnacle Performance, Inc (PPI) regards as proprietary.  PPI will identify specific portions of Defendants' "vanilla" presentation materials (that Defendants showed to PPI at the Sept 6, 2012 settlement conference) that PPI regards as proprietary.  If the materials are contained or described in "The Pin Drop Principle" or the public domain, the parties agree that the information is not proprietary.

B. For 24 months from today, they will not enter into any contracts for meeting facilitation skills training.  This does not prohibit Defendants from conducting etiquette skills training.

C. For 24 months from today, they will not train any current PPI clients.  This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2.  Defendants will pay PPI $50,000 over 5 years, in annual payments of $10,000 with the first payment made January 1, 2013.  There is joint and several liability among the individual defendants for those payments.

3.  PPI will remove the facebook post to which Defendants object.

4. Parties will execute full general mutual releases.  PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

5. Defendants will provide a mutually acceptable letter on Ovation letterhead drafted by PPI signed by Garbis to GE endorsing PPI.

6.  PPI will make an offer to David Marcotte to settle its disputes with him on these terms: PPI will fully release David Marcotte if he pays $1,500 by March 1, 2013 and signs a letter of apology to PPI.

(Defs.' Mot., Ex. A ("Settlement Terms sheet").)  The Settlement Terms sheet was signed by Messrs.

Mills, Lewis, and Chaban for PPI, and by Mr. Steigel with authority on behalf of all of the

defendants. (*Id.*)

The parties then consented to the exercise of jurisdiction by a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(c), and the case was reassigned to this court.   [Dkt 71, 73.]
Notwithstanding the signing of the Settlement Terms sheet, no stipulation to dismiss the lawsuit has
yet been filed.   Defendants now move to enforce the Settlement Terms sheet.

## Discussion

The central issue is whether the Settlement Terms sheet is an enforceable agreement.
Defendants also assert that PPI is not complying with the provisions of the Settlement Terms sheet
and is acting in bad faith.   Each issue is addressed in turn below.

I.   <u>The Settlement Terms sheet is an enforceable agreement</u>.

"Whether a settlement agreement is binding is an issue governed by the law of the state in which
the parties executed the agreement."  *Lewis v. School Dist. No. 70,* 648 F.3d 484, 486 n.1 (7th Cir.
2011).   Under Illinois law, "[a] settlement agreement is in the nature of a contract, and construction
and enforcement of such agreements are governed by principles of contract law."  *Solar v. Weinberg*,
653 N.E.2d 1365, 1368 (Ill. App. 1st Dist. 1995).   "Illinois conditions the enforceability of a putative
contract on two predicates: a sufficiently concrete expression of the essential terms of the agreement,
as well as an intent to be bound by that agreement."  *Ocean A. Dev. Corp. v. Aurora Christian Schs.,
Inc.*, 322 F.3d 983, 995 (7th Cir. 2003).

A.       *Intent to be bound.*

"An enforceable contract must include a meeting of the minds or mutual assent to the terms of
the contract."  *Academy Chi. Publishers v. Cheever*, 578 N.E.2d 981, 984 (Ill. 1991).   Mutual assent

is based on "the objective conduct of the parties"; "the parties' subjective intentions are irrelevant." *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp.*, 665 F.3d 897, 901-02 (7th Cir 2011). Whether a "meeting of the minds" exists "is determined by reference to what the parties expressed to each other in their writings, not by their actual mental processes." *Laserage Tech. Corp. v. Laserage Labs., Inc.*, 972 F.2d 799, 802 (7th Cir. 1992).

"The fact that a formal written document is anticipated does not preclude enforcement of a specific preliminary promise." *Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 374 (7th Cir. 1992). "[T]hat the parties left some details for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement." *Porter v. Chicago Bd. of Educ.*, 981 F. Supp. 1129, 1131 n. 4 (N.D. Ill. 1997). "Where the reduction of an agreement to writing and its formal execution is intended by the parties as a condition precedent to its completion, there can be no contract until then, even if the actual terms have been agreed upon. However, the fact parties contemplate that a formal agreement will eventually be executed does not necessarily render prior oral agreements as mere negotiations." *In re Estate of Glassman*, 628 N.E.2d 666, 670 (Ill. App. 1st Dist. 1993) (citations omitted).

PPI argues that the Settlement Terms sheet is not an enforceable agreement because "it was expressly agreed that counsel for the parties would prepare a formal settlement agreement memorializing the terms of the parties' settlement." (Pl.'s Resp. at 2.) [Dkt 81.] PPI states that the Settlement Terms sheet was "prepared very quickly and without scrutiny," that "Settlement Term sheet was drafted by the Court in a matter of minutes," and that the language in the "Settlement Term sheet was neither negotiated nor scrutinized." (*Id.* at 1-2.) PPI asks this court to take judicial notice of "these facts" because this court presided at the settlement conference. (*Id.* at 2 n. 2.)

5

PPI's claimed "facts" are simply untrue. The facts are these. On September 5, the first day of the settlement conference, after several hours of conferencing and negotiating, the court prepared an initial draft of a term sheet by setting out "Plaintiff's proposed settlement 3:00 p.m. " A copy of that proposed settlement is attached to this opinion as Appendix A. This court often prepares such settlement drafts in conferences where the proposed settlement has a number of complex terms because it helps the parties crystalize what has been agreed and what is still unresolved. The court always reviews the terms with the party whose proposal the sheet sets out before tendering it to the opposing side. That process was followed here.

Defendants responded to PPI's proposal with handwritten modifications at 3:40 p.m. (App. B.) The court incorporated those comments into "Defendants' proposed settlement 3:40 p.m.," to which PPI gave comments at 4:00 p.m. (App. C.) Several more proposed settlement sheets followed throughout the afternoon, reflecting the parties' proposals and counter-proposals. (App. D - G.) At approximately 5:00 p.m., the conference broke for the day.

The following day, September 6, 2012, the parties and the court resumed the settlement conference. At 11:00 a.m., the court prepared "Defendants' proposed settlement 11:00 a.m." (App. H.) The parties discussed some modifications of those terms as reflected in handwriting on Appendix H, and the court prepared the final Settlement Terms sheet. After the final terms were agreed, Ms. Garbis and Mr. Bergeron left to catch a plane, but gave their attorney Mr. Stiegel authority to sign on their behalf. Notably, PPI's client representatives, Mr. Mills and Mr. Lewis, were present throughout to the final signing, and personally signed the Settlement Terms sheet, as did their attorney.

There is no indication that the parties intended to make the drafting of another document a

6

condition precedent to reaching an agreement. The Settlement Terms sheet does not contain any reservation that the terms were not final or binding on the parties or that the enforceability of the Settlement Terms sheet is dependant on the execution of another document that re-memorializes the agreement. During the two-day negotiating process multiple drafts of the Settlement Terms sheet were edited and scrutinized by the parties. None of the drafts expressed an intention that the terms were not binding unless and until another document was prepared and signed.

In fact, the final Settlement Terms sheet supports the opposite conclusion. Paragraphs 1(B) and 1(C) contain conditions "[f]or 24 months from today." Thus, the parties intended the terms to be effective starting *that very day*, not beginning some time after a subsequent document would be prepared and signed. The objective evidence demonstrates that the parties intended to be bound by the Settlement Terms sheet.

B.        *The terms are sufficiently definite*.

"A contract is sufficiently definite and certain to be enforceable if the court is enabled from the terms and provisions thereof, under proper rules of construction and applicable principles of equity, to ascertain what the parties have agreed to do." *Cheever*, 578 N.E.2d at 984 (internal quotations omitted). "Put another way, '[p]arties do not have an enforceable contract unless, by the terms of the agreement, a court can require the specific thing contracted for be done.'" *Bus. Sys. Engr., Inc. v. Intl. Bus. Machs. Corp.*, 547 F.3d 882, 888 (7th Cir. 2008) (quoting *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.,* 493 F.3d 841, 850 (7th Cir. 2007)) (internal quotation and modifications omitted). "'A contract may be enforced even though some contract terms may be missing or left to be agreed upon, but if the essential terms are so uncertain that there is no basis for deciding whether

7

the agreement has been kept or broken, there is no contract.'" *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 564 (7th Cir. 2012) (quoting *Cheever*, 578 N.E.2d at 983).

The terms set out on the Settlement Terms sheet are sufficiently definite that an enforceable agreement was created. The parties' obligations under the Settlement Terms sheet are definite enough that there is an objective basis for determining whether a party has breached the agreement. Defendants will pay PPI $50,000 over five years in yearly installment payments, will never use specified PPI proprietary materials, will not enter into any contracts for meeting facilitation skills training for 24 months beginning September 6, 2012, will not train any of PPI's current clients for 24 months after September 6, 2012 provided that PPI provides a list and proof of such clients, will provide a mutually acceptable letter to GE endorsing PPI, and will execute a release. In return, PPI will take down an objectionable Facebook post, will make an offer of settlement to Mr. Marcotte, and will execute a release. In contrast to situations where the terms of the agreement were so indefinite as to not be enforceable, the Settlement Terms sheet does not make "mere vague expressions of warm wishes for a bright future," but instead lays out concrete obligations for the parties. *Dawson*, 977 F.2d at 374.

The parties' post-settlement interactions reveal that they disagree over what constitutes a "current client" as contemplated by Settlement Terms sheet. (Pl.'s Resp. at 4.) But the Settlement Terms sheet does not condition its effectiveness on the parties' later agreement on what "current client" means, and the term "current client" is sufficiently definite such that a court, using traditional methods of contractual interpretation, can determine which clients fall within the scope of that provision even if it is not defined in the contract. *Cf.*, *e.g., Chapman v. Engel*, 865 N.E.2d 330, 333 (Ill. App. 1st Dist. 2007) (stating that "a contract term is not ambiguous merely because it is

8

undefined in the contract" and using dictionary to construe meaning of contractual term "default");
*Hunt v. Farmers Ins. Exch.*, 831 N.E.2d 1100, 1102) (Ill. App. 5th Dist. 2005) (construing
contractual term "conviction" through use of dictionary); *Chatham Corp. v. Dann Ins.*, 812 N.E.2d
483, 488-89 (Ill. App. 1st Dist. 2004) (construing contractual term "necessary" through use of
dictionary); *Hagerty, Lockenvitz, Ginzkey & Assocs. v. Ginzkey*, 406 N.E.2d 1145, 1146-47 (Ill. App.
4th Dist. 1980) (construing contractual term "compete" through use of dictionary).

Accordingly, because the parties intended to be bound and the terms are sufficiently definite,
the Settlement Terms sheet is an enforceable agreement.

II.      Whether PPI is complying with the Settlement Terms sheet

Defendants contend that PPI is not complying with its obligations under paragraphs 1(C), 4, and
6 of the Settlement Terms sheet. (Defs.' Mot. ¶¶ 13-20.)

A.      *Paragraph 1(C): Proof of Current Clients*

Paragraph 1(C) of the Settlement Terms sheet provides: "For 24 months from today,
[defendants] will not train any current PPI clients. This restriction is dependant on PPI providing
a list of those clients and proof that they are current clients." Defendants argue that PPI is not
complying with its obligations under paragraph 1(C) of the Settlement Terms sheet in that it has not
provided proof as to which clients are "current." (Defs.' Mot. ¶ 18.) Contending that providing
proof for each client "would be extremely burdensome," PPI has tendered to defendants with a list
of 200 clients and suggested that Garbis could identify clients on the list "with which she is
unfamiliar or which she reasonably suspects are not PPI clients." (*Id.* ¶ 19 & Ex. G.) Defendants

9

argue PPI's delay in providing proof constitutes bad faith and frees defendants from their obligation to not train PPI's current clients. (*Id.* ¶ 20.) PPI responds that before PPI can provide proof, the parties must agree on what constitutes a "current client." (Pl.'s Resp. at 4.)

PPI cannot change the terms of the agreement simply because it has now decided they are too burdensome. As the various settlement proposals attached as appendices to this opinion demonstrate, paragraph 1(C) was agreed in its present form on the afternoon of the first day of the settlement conference. PPI's representatives had plenty of time – in fact, overnight – to decide if they could accept PPI's burden to provide proof of its current clients as a condition precedent, and they never changed that provision. PPI's present argument that it would be too burdensome to do so is simply buyer's remorse.

PPI's position is also contrary to the express language of paragraph 1(C). Paragraph 1(C) does not require that the parties agree on who is a "current client" before PPI provides proof of client status; rather, providing that proof is a *condition precedent* to the limitation on the defendants. Paragraph 1(C) puts an affirmative obligation on PPI only if PPI desires to enforce the restriction. Paragraph 1(C), however, does not mandate a time by which PPI must provide the list and proof, although any restriction on defendants will expire on September 6, 2014. It is conceivable that PPI could let the entire 24 months pass without providing any proof. But defendants cannot be liable for breach of contract for training PPI's "current clients" prior to receiving adequate proof from PPI.[2]

B.      *Paragraph 4: Release or Covenant Not to Sue*

---

[2] PPI also seeks to insert the word "perform" into the obligation in paragraph 1(B). (Pl.'s Resp. at 3-4.) The court notes that the word "perform" was not part of any of the drafts of paragraph 1(B).

Paragraph 4 provides that "[p]arties will execute full general mutual releases.  PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties." (Settlement Terms sheet ¶ 4.)  Defendants argue that they should receive a full, general release rather than a covenant not to sue because PPI has settled with Mr. Marcotte, thereby obviating the need to protect PPI's interests against third parties.  (Defs.' Reply at 4.) [Dkt 82.]  As written, however, the term "third parties" is not limited to Mr. Marcotte, and thus by the terms of the agreement, PPI may give a release in the form of a covenant not to sue.

C.      *Paragraph 6: PPI and Mr. Marcotte*

Paragraph 6 of the Settlement Terms sheet provides: "PPI will fully release David Marcotte if he pays $1,500 by March 1, 2013 and signs a letter of apology to PPI."  (Settlement Terms sheet ¶ 6.)  Defendants argue that PPI is not living up to its offer to Mr. Marcotte.  (Defs.' Mot. ¶¶ 13-16.)

Mr. Marcotte has tendered $1,500 and has signed a letter wherein he states that he is "truly sorry that it came to this and/or that I caused PPI any difficulty.  Please accept my deepest apologies." (*Id.*, Ex. E.)  For unspecified reasons, PPI does not accept Mr. Marcotte's letter and has drafted him another letter for him to sign.  (*Id.* ¶ 15 and Ex. F.)  PPI has also refused to sign the "General Release" that Mr. Marcotte proposed to PPI.  Instead, PPI states that it will accept Mr. Marcotte's original letter of apology if Mr. Marcotte agrees to accept a covenant not to sue in lieu of a release. (Pl.'s Resp. at 5.)

The Settlement Terms sheet does not require PPI's approval of the apology letter.  As compared to paragraph 5 of the Settlement Terms sheet which requires that defendants provide a "mutually acceptable letter" to GE, PPI's offer to Mr. Marcotte contains no such caveat.  (Settlement Terms

sheet ¶¶ 5, 6.)

The parties disagree about whether PPI must provide Mr. Marcotte with a general release rather than a covenant not to sue. Under the Settlement Terms sheet, however, no additional document is necessary to fully release Mr. Marcotte. Once Mr. Marcotte accepted PPI's offer through his payment and apology letter, he was "fully released." No further document was required to release PPI's claims against Mr. Marcotte.

III.        Bad Faith

Defendants request attorney's fees as they believe that PPI has acted in bad faith for failing to comply with and attempting to renegotiate the settlement terms. (Defs.' Mot. ¶¶ 21-25.) Defendants do not identify any express or inherent authority for the court to award such fees. Defendants' request for attorney's fees is denied.

IV.        Conclusion of this action.

The court concludes that the parties reached a binding agreement to settle the claims brought in this lawsuit. The settlement agreement extinguishes the claims in the lawsuit. *See Wrightsell v. Cook County*, 599 F.3d 781, 784 (7th Cir. 2010) (observing that "in an ordinary civil settlement it is taken for granted that the settlement extinguishes all rights to further prosecution of the suit"). Accordingly, all other pending motions are denied as moot. *See American Patriot Ins. Agency, Inc. v. Mutual Risk Mgt., Ltd.*, 364 F.3d 884, 888 (7th Cir. 2004) (observing that if the parties settle a case any motions filed in it are moot).

Based on the rulings here, the court anticipates that a stipulation to dismiss this case with

prejudice should be filed shortly.  A status hearing is hereby set for March 12, 2013 at 9:45 a.m.  If

a stipulation to dismiss is filed before that date, the status hearing will be stricken.

## Conclusion

For the foregoing reasons, Defendants' Motion For Enforcement of Settlement Agreement

Dated September 6, 2012 [dkt 78] is granted.  All other pending motions [dkt 9, 27, 30, 35] are

denied as moot.  A status hearing is set for March 12, 2013 at 9:45 a.m.  If a stipulation to

dismiss has been submitted in advance of that date, the status hearing will be stricken.

_____
Geraldine Soat Brown
United States Magistrate Judge

**DATE:** February 21, 2013

Pinnacle Performance, Inc. v Garbis, et al.     Sept 5, 2012

        Plaintiff's proposed settlement   3:00 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communications
LLC) agree:

        A. They will never use Pinnacle Performance, Inc (PPI) proprietary materials.  *

        B. For 24 months from today, they will not enter into any contracts for
presentation/communications skills training.  This does not prohibit Defendants from conducting
etiquette skills training.

        C. For 24 months from today, they will not solicit any PPI clients for any training
whatsoever. PPI will provide a list of those clients.

2. Defendants will pay PPI $85,000.

3. PPI will remove the facebook post to which Defendants object.

4. Parties will execute full general mutual releases, provided, however, that PPI may give a
release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

* PPI will identify specific portions of the Ovation/GE presentation
materials that PPI regards as proprietary.

Pinnacle Performance, Inc. v Garbis, et al.    Sept 5, 2012

       Plaintiff's proposed settlement   3:00 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communications LLC) agree:

    A.  They will never use Pinnacle Performance, Inc (PPI) proprietary materials.  PPI will identify specific protions of the Ovation/ GE presentation materials that PPI regards as proprietary.  *& the "proprietary materials" are contained or described*

    B.  For 24 months from today, they will not enter into any contracts for presentation/communications skills training.  This does not prohibit Defendants from conducting etiquette skills training.

    C.  For 24 months from today, they will not solicit any PPI clients for any training whatsoever.  PPI will provide a list of those clients; *subject to terms*

2. Defendants will pay PPI $5,000.

3. PPI will remove the facebook post to which Defendants object.

4. Parties will execute full general mutual releases, provided, however, that PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

*This restriction is dependent upon*

*"in the Pin Drop Principle," the parties agree that the info is not proprietary*

**Appendix B**

*TT mock up 4 pm*

Pinnacle Performance, Inc. v Garbis, et al.    Sept 5, 2012

Defendants' proposed settlement  3:40 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

*TT: JK*

    A. They will never use Pinnacle Performance, Inc (PPI) proprietary materials.  PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as proprietary.  If the materials are contained or described in "The Pin Drop Principle," the parties agree that the information is not proprietary.

*For 18 / meeting facilitation*

    B. ~~Defendants do not agree to the term that~~ "For 24 months from today, they will not enter into any contracts for presentation/~~communications~~ skills training.  This does not prohibit Defendants from conducting etiquette skills training," ~~unless it is reduced to 12 months and a more specific definition of "presentation/communications skills training" is included.~~

*18*

    C. For 12 months from today, they will not train any current PPI clients.  This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $5,000.    *TT: 80,000*

3. PPI will remove the facebook post to which Defendants object.

4. Parties will execute full general mutual releases, provided, however, that PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

5. Letter on Ovation letterhead *to GE* signed by Garbis to ~~GE effect that~~ ~~Pinnacle PPI~~ ~~strictly~~ ~~forth~~ *endorsing* advocating for PPI, not to contain any admissions or negative ~~into~~ material about defendants, to attempt to facilitate ~~P~~PI's ~~a~~ relationship w/ GE.

Pinnacle Performance, Inc. v Garbis, et al.     Sept 5, 2012

   Plaintiff's proposed settlement 4:10 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

  A. They will never use Pinnacle Performance, Inc (PPI) proprietary materials. PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as proprietary. If the materials are contained or described in "The Pin Drop Principle," the parties agree that the information is not proprietary. [BOTH SIDES ACCEPT THIS.]

  B. For 18 months from today, they will not enter into any contracts for presentation/meeting facilitation skills training. This does not prohibit Defendants from conducting etiquette skills training..

  C. For 18 months from today, they will not train any current PPI clients. This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $80,000.

3. PPI will remove the facebook post to which Defendants object. [BOTH SIDES AGREE TO THIS.]

4. Parties will execute full general mutual releases, provided, however, that PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties. [BOTH SIDES AGREE TO THIS]

5. Defendants will provide a letter on Ovation letterhead signed by Garbis to GE endorsing PPI, not to contain any admissions or negative material about either side, t attempt to facilitate PPI's relationship with GE.

**Appendix D**

Pinnacle Performance, Inc. v Garbis, et al.    Sept 5, 2012

Plaintiff's proposed settlement 4:10 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

A. They will never use Pinnacle Performance, Inc (PPI) proprietary materials. PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as proprietary. If the materials are contained or described in "The Pin Drop Principle," the parties agree that the information is not proprietary. [BOTH SIDES ACCEPT THIS.]

B. For 18 months from today, they will not enter into any contracts for ~~presentation~~/meeting facilitation skills training. This does not prohibit Defendants from conducting etiquette skills training.. *following the*

C. For 18 months from today, they will not train any current PPI clients. This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $~~10,000~~. *4500* *in 18 months* *expect clients* *not if*    *in B+C*

3. PPI will remove the facebook post to which Defendants object. [BOTH SIDES AGREE TO THIS.]    *including David Mascotte*

4. Parties will execute full general mutual releases, ~~provided, however, that PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.~~ ~~[BOTH SIDES AGREE TO THIS]~~

5. Defendants will provide a letter on Ovation letterhead, signed by Garbis to GE endorsing PPI ~~not to contain any admissions or negative material about either side, t attempt to facilitate PPI's relationship with GE.~~

*mutually acceptable*

*drafted by Pinnacle.*

**Appendix E**

Pinnacle Performance, Inc. v Garbis, et al.     Sept 5, 2012

              Defendants' proposed settlement 4:30 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

       A.  They will never use Pinnacle Performance, Inc (PPI) proprietary materials.  PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as proprietary.  If the materials are contained or described in "The Pin Drop Principle," the parties agree that the information is not proprietary. [BOTH SIDES ACCEPT THIS.]

       B.  For 18 months from today, they will not enter into any contracts for meeting facilitation skills training.  This does not prohibit Defendants from conducting etiquette skills training..

       C.  For 18 months from today, they will not train any current PPI clients.  This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $7,500, following the 18 months' restriction in B&C.

3. PPI will remove the facebook post to which Defendants object. [BOTH SIDES AGREE TO THIS.]

4. Parties will execute full general mutual releases, including David Marcotte.  Alternatively, defendants will pay $5,000 (instead of the $7,500 in #2) and  PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

5. Defendants will provide a mutually acceptable letter on Ovation letterhead drafted by PPI signed by Garbis to GE endorsing PPI.

**Appendix F**

Pinnacle Performance, Inc. v Garbis, et al.    Sept 5, 2012

Defendants' proposed settlement 4:30 p.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

A. They will never use Pinnacle Performance, Inc (PPI) proprietary ~~materials~~. *materials that* *claims are* PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as *or otherwise in the public domain* ~~proprietary~~. If the materials are contained or described in "The Pin Drop Principle," the parties agree that the information is not proprietary. [BOTH SIDES ACCEPT THIS.]

*and defendants will not use that material.*

✱ B. For 18 months from today, they will not enter into any contracts for meeting facilitation skills training.  This does not prohibit Defendants from conducting etiquette skills training..

C. For 18 months from today, they will not train any current PPI clients.  This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $7,500, following the 18 months' restriction in B&C.

3. PPI will remove the facebook post to which Defendants object. [BOTH SIDES AGREE TO THIS.]

4. Parties will execute full general mutual releases, including David Marcotte.  Alternatively, defendants will pay $5,000 (instead of the $7,500 in #2) and PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

5. Defendants will provide a mutually acceptable letter on Ovation letterhead drafted by PPI signed by Garbis to GE endorsing PPI.

4:55   Strike B.

**Appendix G**

Pinnacle Performance, Inc. v Garbis, et al.    Sept 6, 2012

Defendants' proposed settlement 11:00 a.m

1. Defendants (Kerri Gabris, Eric Bergeron, Pinnacle Northeast, Inc., Ovation Communication LLC) agree:

"Vanilla book" - shown to Plant at
Not use
Conference   9/6

   A. They will never use materials that Pinnacle Performance, Inc (PPI) regards as proprietary. PPI will identify specific portions of the Ovation/ GE presentation materials that PPI regards as proprietary. If the materials are contained or described in "The Pin Drop Principle" or the public domain, the parties agree that the information is not proprietary.

   B. For 24 months from today, they will not enter into any contracts for meeting facilitation skills training. This does not prohibit Defendants from conducting etiquette skills training..

   C. For 24 months from today, they will not train any current PPI clients. This restriction is dependant on PPI providing a list of those clients and proof that they are current clients.

2. Defendants will pay PPI $15,000, following the 18 months' restriction in B&C. 51,000 over 5 yrs beginning Jan 1, 2013, 10,000 per year. No interest.

3. PPI will remove the facebook post to which Defendants object. [BOTH SIDES AGREE TO THIS.]

4. Parties will execute full general mutual releases. PPI may give a release in the form of a covenant not to sue or similar, to preserve its rights against third parties.

5. Defendants will provide a mutually acceptable letter on Ovation letterhead drafted by PPI signed by Garbis to GE endorsing PPI.

6. Defendant agree to offer to think if D. Ma agrees to pay $1500 no later than March 1, 2013, PPI will fully release D.M. and Dan will send letter of apology PPI with release

**Appendix H**